UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

|  |  |  |
|---|---|---|
| GREGORY S. FEHRIBACH, CHAPTER 7 TRUSTEE OF TAURUS FOODS, INC., | ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | 1:03-cv-0551-JDT-WTL |
|  | ) |  |
| ERNST & YOUNG LLP, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket
No. 55), MOTION IN LIMINE (Docket No. 58), AND RELATED MOTIONS
(Docket Nos. 72, 93, 94)[1]**

The Plaintiff, Gregory S. Fehribach, Chapter 7 Trustee of Taurus Foods, Inc.,

filed suit against Ernst & Young LLP ("E&Y"), alleging negligence and breach of contract

pertaining to E&Y's audit of Taurus's financial statements for the fiscal year ending

January 28, 1995.  This matter is before the court on the Defendant's Motion for

Summary Judgment, Motion in Limine, and related motions.  The court decides this

matter as follows:

**I.     BACKGROUND**

In 1974, four individuals started Taurus Foods, Inc., a small closely held food

distribution company located in Indianapolis.  After 1992, its sole owners were Ronald

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

Stein and Donald Wells, each owning fifty percent (50%) of Taurus.  Stein was the President, while Wells served as Executive Vice President, Secretary, and Treasurer. The company's controller, Vice President of Finance, and senior financial officer was Lisa Corry, Wells's daughter.  (Corry Dep. 15:19-16:8.)  Prior to working at Taurus, Corry had worked as a Certified Public Accountant at the then-Big Eight firm of Arthur Young (E&Y's predecessor) for almost five years, and had obtained the position of supervising senior auditor.  (*Id.* 82:12-22.)  She left Arthur Young in 1985 to work as an internal auditor for one company before coming to Taurus in 1988.  She has not kept up her CPA license since leaving Arthur Young in 1985.  (*Id.* 113:21-114:7.)

Taurus retained E&Y to provide an audit of its financial statements for the fiscal year ending January 28, 1995, in accordance with Generally Accepted Auditing Standards (GAAS).  In October 1995, E&Y issued its audit report of the financial statements.  (Mem. Supp. S.J. Ex. E.)  The audit report contained an "unqualified" opinion, which meant, in this case, that it said nothing about what is known as a "going concern" issue.  Continuation of an entity as a going concern is assumed in financial reporting in the absence of significant information to the contrary.  Ordinarily, information that significantly contradicts the going concern assumption relates to the entity's inability to continue to meet its obligations as they become due without substantial disposition of assets outside the ordinary course of business, restructuring of debt, externally forced revisions of its operations, or similar actions.  (Am. Mem. Opp'n S.J. Ex. C.)

The American Institute of Certified Public Accountants (AICPA) promulgates the Statements on Auditing Standards (SAS), which document the Generally Accepted Auditing Standards.  According to SAS 59, "[t]he auditor has a responsibility to evaluate whether there is substantial doubt about the entity's ability to continue as a going concern for a reasonable period of time, not to exceed one year beyond the date of the financial statements being audited."  (*Id.*)

From 1988 through May 1996, Taurus's principal lending relationship was with Bank One Indianapolis.  Bank One Indianapolis offered Taurus a line of credit, secured by Taurus's inventory and accounts receivable.  Following a period of declining cash flow and diminishing margins for Taurus, Bank One grew concerned with Taurus's ability to repay its line of credit obligations.  As a result, in May 1996, Bank One Indianapolis transferred the line of credit to an affiliated entity, Bank One Milwaukee.  Bank One's Milwaukee affiliate had an asset-based lending group, structured to handle riskier loans.  (Schnier Dep. 12:2-9.)  Bank One Milwaukee imposed greater controls over Taurus and monitored the collateral more closely.  (Markley Dep. 26:20-27:11.)  In particular, Bank One Milwaukee required Taurus to submit daily reports showing its inventory and accounts receivable.  Corry was in charge of preparing and submitting the daily inventory and accounts receivable reports for Taurus's line of credit with Bank One.  The bank also increased the interest rate on Taurus's loans and revised the borrowing formula, reducing Taurus's ability to borrow.  (Wells Dep. 171:21-172:23.)

In addition to the increased financial pressures caused by the bank's new lending terms, the company continued to experience declining margins, declining sales, and

increasing expenses.  (Corry Dep. 133:1-3.)  By the fall of 1996, Taurus was failing to generate the cash necessary to continue operating the business.  (*Id.* 227:22-228:3.)  As a result, in October 1996, Corry began defrauding Bank One by inflating the amount of Taurus's sales and accounts receivable on the daily forms submitted to Bank One, causing Taurus's line of credit to be inflated.  (*Id.* 150:4-5, 151:7-24.)  In turn, Taurus borrowed much of the inflated line of credit.  By continuing this fraud, Corry was "keeping the company afloat."  (*Id.* 181:22-25.)  Corry continued defrauding the bank until about August 1997.  (*Id.* 151:16-24.)  Neither Wells nor Stein knew of Corry's fraudulent conduct.  It wasn't until late August or September 1997 that Corry[2] informed them of her fraudulent conduct with Bank One.  The principals of Taurus then took immediate steps to disclose the fraudulent conduct to Bank One, and upon learning of the fraud, Bank One refused to extend more financing to Taurus.  (Wells Dep. 162.)  Shortly thereafter, on January 5, 1998, three of Taurus's creditors filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.  The bankruptcy court granted the petition for relief on February 19, 1998.

The Plaintiff, Mr. Gregory S. Fehribach, is the Chapter 7 Trustee of Taurus.  On May 16, 2001, the Plaintiff filed the Complaint against E&Y for negligence and breach of contract relating to audits E&Y provided of Taurus's financial statements for the fiscal years (FYs) 1995 and 1996.  On March 22, 2002, the Plaintiff amended the Complaint, dropping the claims relating to the FY 1996 audit.

---

[2]  Corry later pled guilty to bank fraud charges.  *United States v. Corry*, 206 F.3d 748 (7th Cir. 2000).

-4-

In support of its claim, the Plaintiff provides the expert opinion of Mr. Gary P. Fitzgerald.  Mr. Fitzgerald is a partner in the accounting and consulting firm of Fitzgerald, Snyder & Co., P.C., and has over twenty-five years of audit experience as a Certified Public Accountant.  (Fitzgerald Rep. ¶¶ 1, 3.)  He opines that E&Y failed to evaluate, as required by SAS 59, whether there was substantial doubt about Taurus's ability to continue as a going concern.  (*Id.* ¶¶ 29-30.)  According to Fitzgerald, an appropriate SAS 59 evaluation of Taurus's financial statements for FY 1995 would require a going concern disclosure as part of the audit report.  (*Id.*)  As a result, Fitzgerald asserts that E&Y's unqualified audit opinion on Taurus's FY 1995 financial statements did not comply with GAAS, and, by omitting the going concern statement, E&Y failed to alert Taurus (and its creditors) of the going concern issue.  (*Id.*)  Moreover, according to Fitzgerald, if E&Y would have alerted Taurus of the issue at the time of the audit report, then Taurus could have addressed the issue, perhaps through orderly liquidation or sale of the company, and avoided $3.2 million in deepening insolvency.  (*Id.* ¶¶ 32-33, 38.)

## II.     STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light most reasonably favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  However, once a properly supported motion for summary judgment is made, the non-movant "cannot rest on the pleadings alone, but must identify specific facts to establish that there is a genuine triable issue." *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994); *see* Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

The Plaintiff claims that E&Y was negligent by conducting an audit with procedures that were not in accordance with GAAS.  In addition, the Plaintiff claims that E&Y is liable for breach of the November 1994 contract between Taurus and E&Y, in which E&Y agreed to provide auditing services and an audit opinion of Taurus's FY 1995 financial statements in accordance with GAAS.  Specifically, the Plaintiff argues that E&Y's alleged negligent omission of the going concern statement as part of the FY 1995 audit report resulted in the deepening insolvency of the company.  In other words, if E&Y had alerted Taurus of the going concern issue at the time of the audit report, then Taurus would have recognized the severity of its financial problems and would have taken steps to prevent falling further into insolvency.  Instead, Taurus allegedly did not recognize the severity of its financial problems until perhaps two years later.  Unfortunately, by that point in time, it was too late to recover from the financial crisis.

According to the Plaintiff, the delay in recognition of the going concern problem caused Taurus to suffer $3.2 million in deepening insolvency.

E&Y presents multiple defenses to the Plaintiff's claims, including: 1) that the applicable statute of limitations bars the Plaintiff's claims; 2) that the Plaintiff fails to provide evidence that Taurus relied on the absence of the going concern statement; 3) that the Plaintiff fails to provide evidence of causation; 4) that Indiana law does not recognize the "deepening insolvency" theory of damages; and 5) that the opinion of the Plaintiff's expert, Mr. Fitzgerald, is not admissible because the methodology underlying his conclusions is unreliable.

Indiana's Accountancy Act of 2001 (the "Accountancy Act"), Ind. Code § 25-2.1-1 *et seq.*, provides the applicable statute of limitations to negligence or breach of contract actions brought "by an individual or a business entity claiming to have been injured as a result of financial statements or other information examined, compiled, certified, audited, or reported on by the defendant accountant as a result of an agreement to provide professional accounting services."  Ind. Code § 25-2.1-15-1.  A plaintiff must commence an action for negligence or breach of contract under the Accountancy Act by the earlier of the following:

> (1) One (1) year from the date the alleged act, omission, or neglect is discovered or should have been discovered by the exercise of reasonable diligence.
>
> (2) Three (3) years after the service for which the suit is brought has been performed or the date of the initial issuance of the accountant's report on the financial statements or other information.

Ind. Code § 25-2.1-15-2.  Both parties agree that § 25-2.1-15-2 provides the applicable statute of limitations for the Plaintiff's claims.

Moreover, 11 U.S.C. § 108(a) extends the applicable limitations period up to an additional "two years after the order for relief," but only if "such period has not expired before the date of the filing of the petition."  Here, the parties dispute whether the limitations period expired prior to the bankruptcy filing on January 5, 1998.  If so, then the claims would be time-barred pursuant to Indiana Code § 25-2.1-15-2.

The dispute focuses on determining when the one year limitations period under § 25-2.1-15-2(1) actually began to accrue.  Section 25-2.1-15-2(1) incorporates a "discovery rule," *Crowe, Chizek, & Co., L.L.P., v. Oil Tech., Inc.*, 771 N.E.2d 1203, 1207 (Ind. Ct. App. 2002), in that it tolls the accrual of the limitations period until the date that the alleged act, omission, or neglect "is discovered or should have been discovered by the exercise of reasonable diligence," Ind. Code § 25-2.1-15-2(1).

E&Y argues that, by 1996, Taurus was well aware that it suffered from severe financial problems that raised substantial doubt as to whether the company could continue as a going concern.  According to E&Y, this knowledge was sufficient to trigger the start of the limitations period.  Thus, E&Y contends that the one year limitations period expired prior to the bankruptcy filing on January 5, 1998.  The Plaintiff disagrees, contending that the triggering event is not Taurus's knowledge of its own financial problems, but its discovery of E&Y's negligent omissions on the audit report.

"The question of when a cause of action accrues is generally one of law for the courts to determine." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006).[3]  "The discovery rule provides that a cause of action accrues when a party knows or in the exercise of [reasonable] diligence could discover, that the contract has been breached or that an injury had been sustained as a result of the tortious act of another." *Perryman*, 846 N.E.2d at 687-88.  However, it is not the discovery of the cause of action itself that triggers the running of the statute of limitations.  Rather, it is the discovery of acts, omissions or neglect underlying the claim, or those that should have been discovered with the exercise of reasonable diligence, that triggers the statute.  *Heaton & Eadie Prof'l Servs. Corp. v. Corneal Consultants of Ind., P.C.*, 841 N.E.2d 1181, 1187-88 (Ind. Ct. App. 2006).

In this case, E&Y issued the alleged negligent audit report of Taurus's FY 1995 financial statements in October 1995.  (Mem. Supp. S.J. Ex. E.)  The audit report was unqualified, which means that it said nothing about a going concern issue.  Without a going concern statement, Taurus could rightfully assume that the financial statements reflected its ability to continue to meet its obligations as they became due over the next fiscal year ending in January 1996.  Thus, the evidence shows that by October 1995,

---

[3] *Perryman's* discussion focuses on the statute of limitations applicable to an action based upon an insurance contract, Ind. Code § 34-11-2-11, which differs from the statute of limitations applicable in this case.  However, § 34-11-2-11 contains the same discovery rule that is at issue in this case.  The only difference being that § 25-2.1-15-2(1) expressly contains the discovery rule, while the discovery rule in § 34-11-2-11 is implicit.  *Perryman*, 846 N.E.2d at 688 (explaining that the discovery rule applies to all tort cases and actions for breach of contract under § 34-11-2-11) (citing *Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 930 (Ind. Ct. App. 2003)).  *Perryman* provides excellent guidance for determining when a cause of action accrues under the discovery rule.

Taurus had knowledge of the fact that the audit report did not include a going concern statement.

Moreover, the evidence clearly and undisputedly reflects that, by the fall of 1996, Corry knew that Taurus was no longer able to meet its obligations, or, in accounting terminology, that there was a going concern issue.  It is for this very reason that Corry began reporting inflated sales and accounts receivable figures to Bank One.  Doing so inflated Taurus's line of credit with the bank and allowed it to borrow more cash to meet its obligations.  In this way, Corry was "keeping the company afloat."  (Corry Dep. 181:22-24.)  Corry admits that, at the time that she began the fraudulent reporting and borrowing, "Taurus was not generating enough cash from its operations to carry forward its operations without additional financing from Bank One."  (*Id.* 212:24-213:11.)  This knowledge is even more evident in the following line of deposition questioning:

> Q.    . . . .  But at the time you submitted the false reports, as an initial proposition, you understood that if you didn't submit those false reports, you weren't going to get cash funds you needed to operate the business at that point in time, correct?
>
> A.    Correct.
>
> Q.    . . ., what did you understand the consequence would be for Taurus at that point in time if you didn't receive the funds that you were requesting and needed at the point in time you began submitting false claims?
>
> A.    I thought we talked about that.  I wouldn't have money to pay my vendors, they wouldn't pay the checks that were presented for payment, then I wouldn't be able to get product, therefore I wouldn't be able to sell anything and therefore sales would decline.

> Q.      All right.  And did you understand that if that chain of events played
>         out, that that would adversely impact Taurus's ability to continue
>         operating?
>
> A.      Well, I mean, that's the logical conclusion.

(*Id.* 227:22-228:22.)

Furthermore, while Corry did not disclose this knowledge to Taurus's owners and directors, Stein and Wells, the knowledge that Corry acquired while acting in the course of her employment at Taurus is imputed to Taurus.  *See Madison County Bank & Trust Co. v. Kreegar*, 514 N.E.2d 279 (Ind. 1987) ("[T]he knowledge of an agent acquired while acting in the course of employment will be imputed to the corporation.") (citing *Prudential Ins. Co. of Am. v. Winans*, 325 N.E.2d 204 (Ind. 1975)).  "It is not necessary in order to carry knowledge to a corporation to show that its board of directors had such knowledge.  The merest novice in the law knows that the knowledge possessed by an agent, while in the act of performing his principal's business within the scope of his authority, is imputed to the principal."  *Id.*  Corry was Taurus's controller, Vice President of Finance, and senior financial officer.  She was not an obscure functionary posted at a remote location; rather, she was at the very nerve center of the company.  She certainly obtained this knowledge while performing Taurus's business and within the scope of her authority.  The law imputes such knowledge to Taurus.

The Plaintiff attempts to demonstrate a disputed issue of fact with regard to Corry's knowledge of the going concern issue as of the fall of 1996.  The Plaintiff argues that the evidence shows that "even when [Corry] began to falsify reports to Taurus's

lender in the fall of 1996, she did not believe there was a going concern issue, but that it was a temporary problem that could be fixed."  (Am. Mem. Opp'n S.J. 12.)  The Plaintiff correctly states that the evidence shows that Corry believed that Taurus's financial problems were temporary and that she could "fix" them.  (*See* Corry Dep. 208:6-209:7.)  However, she testified that the only way that she believed she could "fix" the problems were by defrauding the bank and obtaining more financing.  (*Id.* 212:24-213:11.)  Corry understood that, without the additional financing (which she could only obtain by defrauding the bank), Taurus would not be able to continue operations.  This evidence clearly and undisputedly shows that, by the fall of 1996, Corry understood that there was a going concern issue—that is the sole reason that she gives for defrauding the bank.

In addition, Corry had knowledge that the company was continuing deeper into insolvency.  Describing Taurus's financial situation as of January 1996, she stated, "Our financial statements were horrible.  We had declining margins, declining sales, increasing expenses, it was horrible."  (*Id.* 133:1-3.)  Although she believed (perhaps foolishly) that the company would recover from the problem, she nonetheless knew that it continued to lose money and value.

Thus, by the fall of 1996, Corry had knowledge of the following pertinent facts: 1) that E&Y's audit report, issued in October 1995, did not contain a going concern statement; 2) that Taurus was no longer able to meet its obligations, or, in accounting terminology, that there was a going concern issue; and 3) that Taurus was losing money and value on a continual basis.  The Plaintiff argues that knowledge of these facts were

not sufficient to trigger the running of the statute of limitations.  Instead, according to the

Plaintiff, the "inquiry should be centered on whether Taurus knew or should have

known, through reasonable diligence, of [E&Y's] negligence."  (Am. Mem. Opp'n S.J. 9.)

> The court disagrees.  The Indiana courts have held that:
>
> the discovery rule does not mandate that plaintiffs know with precision the
> legal injury that has been suffered, but merely anticipates that a plaintiff be
> possessed of sufficient information to cause him to inquire further in order
> to determine whether a legal wrong has occurred.  In other words, the
> discovery rule only postpones the statute of limitations by belated
> discovery of key facts and not by delayed discovery of legal theories.

*Perryman*, 846 N.E.2d at 689 (citations omitted).  Indeed, a plaintiff has a duty under the

discovery rule to exercise reasonable diligence to discover the negligent acts or

omissions.  "[T]he exercise of reasonable diligence means simply that an injured party

must act with some promptness where the acts and circumstances of an injury would

put a person of common knowledge and experience on notice that some right of his has

been invaded or that some claim against another party might exist.  The statute of

limitations begins to run from this point and not when advice of counsel is sought or a

full blown theory of recovery developed."  *Id.* (citation omitted).

Corry had knowledge of pertinent facts that reasonably put her on notice that

E&Y had possibly invaded some right of Taurus or that some claim might have existed

against E&Y.  At least by the fall of 1996, just one year after the issuance of E&Y's audit

report and only twenty-one (21) months after the end of FY 1995, Corry knew that

-13-

Taurus was no longer able to meet its obligations.  Likewise, she knew that the FY 1995

audit report was unqualified, giving no indication of a possible going concern issue.

Aware of these facts, Corry had a duty under the discovery rule to determine whether

Taurus could maintain a claim against E&Y.  Specifically, she had the duty to ask

herself (or legal counsel) whether the company would have been in the same situation

had E&Y alerted it to a going concern issue the year before.[4]  This extra step, which

Corry apparently did not take, involves making a legal connection between facts that

she already knew.  The discovery rule does not require the tolling of the statute of

limitations while it waits for Corry (or Taurus) to make that legal connection.  *Id.* ("[T]he

discovery rule only postpones the statute of limitations by belated discovery of key facts

and not by delayed discovery of legal theories. . . .  Stated more succinctly, the law

does not require a smoking gun in order for the statute of limitations to commence.").

---

[4]  The Plaintiff directs the court to SAS 59, which states that "[s]ubstantial doubt about the entity's ability to continue as a going concern . . . that arose in the current period does not imply that a basis for such doubt existed in the prior period."  SAS 59, ¶ .15.  Thus, argues the Plaintiff, it would be unreasonable to expect Corry (or Taurus) to look back and question the FY 1995 audit report simply on the basis of financial difficulties in 1996: "Simply put, adverse financial data in the fall of 1996 does not imply, even under the applicable SAS 59, that a diligent investigation should have been made of [E&Y's] past FY95 audit opinion to look for negligence."  (Am. Mem. Opp'n S.J. 14.)  The court is not persuaded by this argument.  Corry has an extensive background in accounting and finance.  In the exercise of reasonable diligence, a reasonable person of her knowledge and experience, acquiring knowledge that the company no longer could continue as a going concern in the fall of 1996, would look back and question how the company arrived in this situation.  This includes looking back and questioning whether the company would have been in the same situation had E&Y alerted it to a going concern issue the year before.  Indeed, this is the same basic analysis that the Plaintiff Trustee went through prior to bringing the current action against E&Y.  Corry had the necessary facts to make the legal connection.  However, she failed to disclose the information to Wells or Stein (although, as discussed above, the law imputes the knowledge to Taurus), and instead tried to "fix" the problem herself by commencing the fraudulent conduct against the bank.

-14-

Accordingly, once Taurus had knowledge of the pertinent facts, the statute of limitations began to run.  As already stated, Corry had knowledge of the pertinent facts by no later than the fall of 1996, when she began defrauding the bank in order to obtain financing to "keep the company afloat."  As Taurus's controller, Vice President of Finance, and senior financial officer, Corry was an agent of the company and acquired this knowledge within the scope of, and while in the course of her employment.  The law imputes the knowledge to Taurus at the time Corry acquired the knowledge.  Thus, Taurus had knowledge of the pertinent facts by the fall of 1996, triggering the commencement of the one-year statute of limitations under § 25-2.1-15-2(1).  The one-year limitations period expired prior to the bankruptcy filing on January 5, 1998.[5] Accordingly, the undisputed evidence shows that the applicable statute of limitations bars the current action, and the court finds it appropriate to GRANT summary judgment in favor of the Defendant and against the Plaintiff.[6]

Additionally, on February 9, 2006, the Plaintiff filed a request for oral argument on the motion for summary judgment and motion in limine.  Oral argument would add

---

[5]  One might argue that the Plaintiff's claims would be barred even if 11 U.S.C. § 108(a)'s two year extension applied.  Section 108(a) grants the trustee "two years after the order of relief" to commence the action.  Here, the bankruptcy court ordered relief on February 19, 1998.  However, the Trustee did not commence this action until May 16, 2001, over three years after the order of relief.  Perhaps the action would be barred despite the two-year extension available under § 108(a).  Nevertheless, because neither party raises this issue, the court will not, and need not, address it.

[6]  Although E&Y's additional arguments may have merit, the court need not address them because it finds that the Plaintiff's claims are time-barred.  Thus, the court will **DENY** as moot E&Y's motion in limine to exclude Fitzgerald's expert testimony.

nothing to the thorough presentations in the parties' briefs.  Accordingly, the court will **DENY** the Plaintiff's request for oral argument.

## IV.    CONCLUSION

For all the foregoing reasons, the court will **GRANT** the Defendant E&Y's Motion for Summary Judgment (Docket No. 55).  The court **DENIES** as moot E&Y's Motion in Limine to Exclude Testimony of Gary P. Fitzgerald (Docket No. 58), and likewise **DENIES** as moot the Plaintiff's Motion for Leave to File a Surreply in Opposition to the Motion in Limine (Docket No. 93) and Motion for Leave to File a Surreply in Opposition to the Motion for Summary Judgment (Docket No. 94).

In addition, the court **DENIES** the Plaintiff's request for oral argument on the motion for summary judgment and motion in limine (Docket No. 72).

ALL OF WHICH IS ENTERED this 14th day of July 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Christopher A. Byrne
cbyrnetaurus@earthlink.net

Andrea L. Cohen
Rubin & Levin, PC
acohen@rubin-levin.net

John C. Hoard
Rubin & Levin, PC
johnh@rubin-levin.net

Elliott D. Levin
Rubin & Levin, PC
edl@rubin-levin.net

Stanley J. Parzen
Mayer Brown Rowe & Maw LLP
sparzen@mayerbrownrowe.com

John J. Tharp Jr.
Mayer Brown Rowe & Maw LLP
jtharp@mayerbrownrowe.com

Brian W. Welch
Bingham Mchale
bwelch@binghammchale.com

Magistrate Judge William T. Lawrence